**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
SOUTHERN DISTRICT OF TEXAS DIVISION**

| | |
|---|---|
| **JESSICA CAROL WILLIAMS,** § | |
| Plaintiff, § | |
| § | |
| vs. § | **CIVIL ACTION NO. 4:18-cv-3800** |
| § | **Jury Demanded** |
| **KELSEY-SEYBOLD** § | |
| **MEDICAL GROUP PLLC et al.,** § | |
| Defendants. § | |

**PLAINTIFF'S, ORIGINAL COMPLAINT
AND JURY DEMAND**

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Jessica Williams, hereinafter called Davis, complaining of and about KS Management Services, L.L.C., hereinafter called KSM, and Kelsey-Seybold Medical Group PLLC, hereinafter called Kelsey-Seybold, and for cause of action shows unto the Court the following:

**PARTIES AND SERVICE**

1.  Plaintiff, Jessica Williams, hereinafter called Williams, is a citizen of the United States and the State of Texas and resides in Harris County, Texas.

2.  Defendant KSM may be served by serving Tony Lin, its agent authorized to accept service at 2727 W. Holcombe Blvd., 4th Floor, Houston, Texas 77025.

3.  Defendant Kelsey-Seybold may be served by serving Tony Lin, its agent authorized to accept service at 2727 W. Holcombe Blvd., 4th Floor, Houston, Texas 77025.

**JURISDICTION**

4.  The action arises under Jurisdiction pursuant to 28 U.S.C. §§ 451, 1331, and 1343. This action is authorized and instituted pursuant to 42 U.S.C. §§ 2000e-5(f) (1) and (3)

("Title VII"), and the Civil Rights Act of 1964, 42 U.S.C.S. § 12112, The American with Disabilities Act (ADA), the Americans with Disabilities Act Amendments Act (ADAAA), the Tex. Labor Code, Section 21, as the ADEA, and GINA. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of Texas.

5. This court has supplemental jurisdiction over state law claims discussed below under 28 U.S.C. §1367 (a) because they arise out of the same case or controversy as hereinafter more fully appears.

6. This Court has supplemental jurisdiction over state law claims discussed below under 28 U.S.C. Section 1367(a) because they arise out of the same case or controversy.

## NATURE OF ACTION

7. This is an action under ("Title VII"), and the Civil Rights Act of 1964, 42 U.S.C.S. § 12112, The American with Disabilities Act (ADA), the Americans with Disabilities Act Amendments Act (ADAAA), the ADEA, the GINA, and the Tex. Labor Code, Section 21, to correct unlawful employment practices on the basis of disability, i.e., being disabled and/or having a history of disability and/or being regarded as disabled. This employment discrimination case is brought by Jessica Williams, a current employee for Defendants, Kelsey-Seybold and KSM.

8. Plaintiff Williams brings this intentional infliction of emotional distress, disability discrimination and retaliation case against Defendants pursuant to the Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 e-5 (f) (3), the Civil Rights Act of 1991 ("Title VII"), the Texas Labor Code §§21, 42 U.S.C.S. § 12112, The American with Disabilities Act (ADA), the Americans with Disabilities Act Amendments Act (ADAAA), the ADEA, the GINA, Tex. Labor

2

Code, Section 21.051, and the Tex. Labor Code, Section 21.055.

9. Williams brings this action because KSM and Kelsey-Seybold has maintained a discriminatory workplace in which she has been subject to discrimination and bias because of her disability i.e., being disabled and/or having a history of disability and/or being regarded as disabled. When Williams opposed these practices, she was retaliated against. Williams' opposition to KSM and Kelsey-Seybold's discriminatory employment practices was also a motivating factor for both Defendants' refusal to treat her the same as other employees.

## CONDITIONS PRECEDENT

11. All conditions precedent to jurisdiction have occurred or been complied with to the extent possible by Plaintiff: a charge of discrimination was filed with the Equal Employment Opportunity Commission within three hundred days of the acts or series of related acts complained of herein. Plaintiff's Complaint is filed within ninety days of Plaintiff's receipt of the Equal Employment Opportunity Commission's issuance of a right to sue letter, *See* Exhibit 1. In addition, a charge of discrimination was also filed with the TWC and the right to sue letter was issued. This case was timely filed, *See* Exhibit 2.

## FACTS

12. Jessica Williams has been employment with Kelsey-Seybold in July 27, 2015.

13. Williams has not received any write-ups (or been subject to any other disciplinary action) the entire time she has been employed, other than that complained of in this petition.

14. On December 17, 2017, Williams was working at her desk when she received a phone call from Wendy Shapiro to come to Shapiro's office.

15. Shapiro questioned Williams about a "time off" request William had put in for a

medical procedure that she needed to undergo due to her disability. The medical procedure was time-sensitive. The pre-approved "time off request" was questioned by Shaprio, who demanded that Williams miss her procedure and come to work. Shapiro belittle Williams telling Williams that she had a bad judgment and that her mental capacity was lacking because Williams wanted to take off then instead of waiting until a co-worker returned from vacation. Shapiro refused to accommodate Williams for any additional medical needs.

16. Due to the harsh words used, Jessica Williams went to human resources and filed a complaint against Wendy Shapiro, with human resources.

17. After filing the complaint, Jessica Williams had her doctor's office fax over proof of why they needed the appointment with Williams. When Williams took the paperwork to Shapiro she was insulted once more. Shapiro further stated that she (Shapiro) did not care about the paperwork from the doctor and that Williams needed to understand that Shapiro did not want Williams to take off from work because there was already another person who was taking off. Shapiro said that she would honor the request, but warned Williams not to "ever do it again."

18. The day, December 15, 2017 came, and Plaintiff Williams left her job and went to have her procedure. When she returned back to work (the same day) Williams received a call from human resources regarding her complaint she submitted against Wendt Shapiro.

19. On December 15, 2017 Mrs. Shapiro came to Plaintiff Williams and apologized for belittling her. Shapiro apologized for the insults and dated that she (Shapiro) was simply having a "bad day " and must've let "took it out" onto Williams.

20. Then, a few moments later, human resources called back an asked if everything was ok. Williams stated that she was still a bit uneasy. The human resources employee stated that Wendy Shapiro immediately accepted fault and agreed to apologize. This was all that occurred

on this day. Plaintiff Williams had no dealings with Shapiro until March 27, 2018.

21. March 27, 2018 Williams returned from lunch to Shapiro yelling at her (Williams) while she was walking across a busy drive in front of the clinic (Meyerland Plaza). Williams was in the middle of the street with cars oncoming when Shapiro told Williams not to step onto the sidewalk and to turn around.

22. Williams was afraid due to oncoming cars and tried to get onto the sidewalk to turn around, but Shapiro blocked Williams from doing so, forcing Williams to turn around into oncoming traffic. The oncoming traffic swerved nearly missing Williams. This caused Williams to go into a "panic attack." Williams became mentally anxious and disturbed. Williams voiced this to Shapiro. Williams was not fit for work. Shapiro agreed that Williams could leave after relieving a co-worker who was now away at lunch.

23. As soon as Williams got to her desk she scheduled an appointment with her doctor because she could not calm down her anxiety, and she opened another human resources complaint against Shapiro.

24. On March 29, Williams had a meeting with Shapiro and supervisor, Laurie De la Quilla. Williams was told that she was being disciplined for posting a picture of her co-worker sleeping on the job on her private social media page. Williams demanded to know what rule she had broken and what she had done wrong, but was never told.

25. Williams was dismissed from the meeting.

26. Again, Williams grew stressed due to Shapiro's actions and verbal insults and this time her anxiety grew worse.

27. Williams felt like she wanted to die.

28. Williams was in tears at her desk when she was told that she had to go and speak

with EAP because De la Quilla had heard that Williams was suicidal at the moment.

29. De la Quilla suggested that William wait on the roof for the police to come and get Williams to be "committed." De la Quilla had Kelsey Sebold personnel escort Plaintiff Williams, who was suicidal, onto the roof.

30. A doctor, Dr. Solomos was waiting on the roof for Plaintiff when she arrived on the roof. After waiting on the roof for so long and not being allowed to leave, Plaintiff grew anxious. Plaintiff began looking down to the ground.

31. The police showed up and escorted Plaintiff Williams off of the roof and to a mental facility.

32. Plaintiff Williams was admitted into the hospital for about four days.

33. In retaliation for complaints, Shapiro sent in, or had others send in documentation to dispute Plaintiff Williams' FMLA claim, causing the FMLA to be denied Shapiro sent in, or had an employee of Kelsey-Seybold send in documentation stating that Plaintiff tried to kill herself, so she was not entitled to FMLA. Plaintiff had not tried to kill herself on the roof, but the Defendant, Shapiro, and De le Quilla, knowing Plaintiff had a disability and was suicidal at that moment, should have never arranged for Plaintiff to be picked up on the roof to begin with. Their attempt to do such, causing any suicide attempts that they allege transpired, although Plaintiff denies they transpired.

34. In addition, in retaliation for the complaints, Shapiro led a series of "attacks" against Williams where she undermined Williams performance despite the fact that Williams was an effective employee, tarnishing Williams employment record and hindering any chance that Williams had at advancement. Shapiro has also, increased the workload of Plaintiff knowing Plaintiff's mental disability in an effort to force Plaintiff to perform bad on reviews and tests so

6

that Shapiro can terminate Plaintiff. Furthermore, Shapiro has refused to make accommodations under the ADA 1990 as amended, with respect to Williams.

### COUNT I- VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT OF 1990

35. By and through her Plaintiff's Original Complaint, Plaintiff pleads that Defendant maintains a pattern and practice of discriminating against disabled Americans, such as Plaintiff, in its employment practices. More specifically, Defendant, through its acts and omissions, unjustifiably disciplined, gave write-ups to, gave bad reviews to, refused advancement employment opportunities to, and intimidated Plaintiff because she suffers from a disability, thereby resulting in the disparate treatment of Plaintiff.

18. By and through her Plaintiff's Original Complaint, Plaintiff pleads that she suffers from a mental impairment that substantially limits one or more major life activities.

19. By and through his Plaintiff's Original Complaint, Plaintiff pleads that she was hired by Defendant and, ipso facto, was qualified for his position based upon the requisite skill, experience, education and other job-related requirements for the position, as shown by the actions of Defendant.

20. By and through her Plaintiff's Original Complaint, Plaintiff pleads that she can perform the essential functions of her job. Moreover, Plaintiff pleads that Defendant knew that Plaintiff did not need any accommodations.

21. By and through her Plaintiff's Original Complaint, Plaintiff pleads that her disability was the sole and/or another improper reason for Defendant's decision to unjustifiably disciplined, gave write-ups to, gave bad reviews to, refused advancement employment opportunities to, and intimidated Plaintiff, resulting in its disparate treatment of Plaintiff.

22. Further, and in the alternative, Plaintiff pleads that she suffers from a physical

impairment that is substantially limiting only because of the attitudes of others, including Defendant, toward the impairment.

23. Further, and in the alternative, Plaintiff pleads that she may not suffer from an impairment that limits a major life activity at all, but is "regarded as" suffering from a substantially limiting impairment, as that term of art is defined by the ADA.

24. Further, and in the alternative, Plaintiff pleads that Defendant utilized qualification standards, employment tests or other selection criteria, that serve to screen out or tend to screen out an individual with a disability or a class of individuals with disabilities and that said standards, tests, and other selection criteria are inconsistent with business necessity. The aforementioned discriminatory labor and employment law practices result in a disparate impact upon Plaintiff and similarly situated individuals, in genre.

## COUNT II- RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990

25. Respondent unlawfully retaliated against Claimant in violation of the ADA, by taking tangible employment actions against Claimant because she opposed conduct made unlawful by the ADA. Specifically, Claimant was retaliated against when she complained to human resources and/or management about disability discrimination and was thereafter fired.

26. Respondent's actions were taken with malice and with reckless indifference to Claimant's federally protected rights and Respondent employer is strictly liable for a supervisor's harassment and subsequent retaliation when the supervisor actually takes a tangible employment action based on Claimant's opposition to conduct made unlawful by the ADA.

```
     Sec. 21.051. DISCRIMINATION BY EMPLOYER. An employer commits
an unlawful employment practice if because of race, color,
disability, religion, sex, national origin, or age the employer:
```

```
        (1) fails or refuses to hire an individual, discharges
an individual, or discriminates in any other manner against an
individual in connection with compensation or the terms,
conditions, or privileges of employment; or
        (2) limits, segregates, or classifies an employee or
applicant for employment in a manner that would deprive or tend
to deprive an individual of any employment opportunity or
adversely affect in any other manner the status of an employee.


     Sec. 21.055. RETALIATION. An employer, labor union, or
employment agency commits an unlawful employment practice if the
employer, labor union, or employment agency retaliates or
discriminates against a person who, under this chapter:
        (1) opposes a discriminatory practice;
        (2) makes or files a charge;
        (3) files a complaint; or
        (4) testifies, assists, or participates in any manner
in an investigation, proceeding, or hearing.
```

**DAMAGES**

31. Plaintiff pleads that Defendant, and its agents, employees and representatives, have caused

Plaintiff grievous harm and damages. As a direct and proximate result of their violations of state

and federal law, Defendant has caused Plaintiff to suffer lost past and future wages. Plaintiff is entitled to pecuniary damages for lost past and future wages to be determined at inquest.

32. Plaintiff pleads that Defendant has caused her to suffer acute mental anguish

9

including, but not limited to, extreme emotional distress and mental pain, intense feelings of depression, low self-esteem, humiliation, belittlement, shame, nausea, loss of sleep and appetite. Plaintiff will, in all likelihood and for the balance of her life, continue to suffer mental anguish. As such, Plaintiff is entitled to compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

33. Plaintiff pleads that Defendant violated Plaintiff's civil rights with malice or reckless indifference to her federally protected rights. As such, Plaintiff is entitled to punitive damages in an amount to be determined at inquest and at the maximum rate permitted by law.

34. Plaintiff was forced to secure the undersigned counsel to protect her civil rights and, therefore, requests an award of attorney's fees.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that upon final trial on the merits, she recover judgment against Defendant, said judgment entitling Plaintiff to: 1. Compensation for all reasonable damages suffered by Plaintiff, including, but not limited to, past and future wages and other compensation, in an amount to be determined upon inquest;

2. Compensation for compensatory and punitive damages, in an amount to be determined upon inquest;

3. Pre-judgment and post-judgment interest, at the maximum rate permitted by law;

4. All costs of court expended in this lawsuit;

5. Reasonable and necessary attorney's fees;

6. A mandatory injunction reinstating Plaintiff's employment and employment benefits, retroactive to fees retroactive to the date of Plaintiff's termination.

7. A mandatory injunction forbidding Defendant from violating rights secured by the

Americans With Disabilities Act of 1990;

    8. Such other and further legal relief, either at law or equity, to which Plaintiff may be justly entitled.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Jessica Williams, respectfully prays that the Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendant for damages in an amount within the jurisdictional limits of the Court; exemplary damages, together with interest as allowed by law; costs of court; and such other and further relief to which the Plaintiff may be entitled at law or in equity.

Respectfully submitted,

By: */s/Allie R. Booker*
    Allie R. Booker
    Attorney for Plaintiff
    Texas Bar No. 24071071
    Southern District Bar No: 1089873
    E-Mail: booker@bookerlawfirm.com
    1200 Rothwell
    Houston, Texas 77002
    Tel. (713) 292-2225
    Fax. (713) 583-3995

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY**