United States District Court
Southern District of Texas

**ENTERED**

May 26, 2020

David J. Bradley, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| JESSICA WILLIAMS, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:18-3800 |
| | § | |
| KS MANAGEMENT SERVICES, LLC, | § | |
| *et al.*, | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Before the Court in this workplace discrimination and retaliation case is KS Management Services, LLC's and Kelsey Seybold Medical Group PLLC's ("Defendants") Motion for Summary Judgment [Doc. # 15] ("Motion").  Jessica Williams ("Plaintiff") has responded,[1] and Defendants replied.[2]  The Motion is ripe for consideration.  Based on the parties' briefing, pertinent matters of record, and relevant legal authority, the Court **grants** Defendants' Motion.

## I.    BACKGROUND

Plaintiff is a current employee of Defendant KS Management Services, LLC ("KS").  KS provides administrative and management services on behalf of Kelsey-Seybold Medical Group, PLLC, a healthcare system with over 20 locations in the

---

[1]    Plaintiff's Response to Defendant KS Management's Motion for Summary Judgment [Doc. # 23] ("Response").

[2]    Defendant KS Management Services, LLC's Reply to Plaintiff's Response to Motion for Summary Judgment [Doc. # 24] ("Reply").

Houston area.[3]  Plaintiff was hired by KS as a Private Branch Exchange[4] ("PBX") telephone operator on July 24, 2015.  Plaintiff's duties as a PBX operator involve directing incoming calls to the correct individual or department, or routing calls to a voicemail message system.  Plaintiff is currently employed as a PBX operator and has received satisfactory performance reviews and merit-based pay increases every year she has been employed by KS.[5]

Plaintiff requested and was granted leaves of absence on 48 occasions throughout her employment.  Some of these leaves were continuous, while others were intermittent.[6]  Plaintiff used this time off to seek treatment for her own health conditions or to care for family members.  Since Plaintiff's hire date, all of her requests for time off have been approved.[7]

In August 2016, Plaintiff was asked to perform additional responsibilities as part of a trial program combining PBX operator and front desk positions.[8]  In

---

[3]     Declaration of Denise Backus [Doc. # 15-2] ("Backus Decl.") ¶ 3.

[4]     A Private Branch Exchange is a private internal telephone network used by a company or organization.  Users of PBX systems can communicate within the company or outside of the system.

[5]     Backus Decl. ¶¶ 5, 8.

        The only formal disciplinary action taken against Plaintiff during her employment with KS was a March 8, 2017, counseling for violations of KS's attendance and punctuality policy.  Backus Decl. ¶ 9.

[6]     Backus Decl. ¶ 12.

[7]     On January 31, 2017, Plaintiff requested to take May 29, 2017 off from work.  That request for time off from work was rejected as unnecessary because May 29th, 2017 was Memorial Day and KS's offices were closed.  Declaration of Wendy Shapiro [Doc. # 15-2] ("Shapiro Decl.") ¶ 3.

[8]     Backus Decl. ¶ 9.

addition to performing the duties of a PBX operator, Plaintiff would be responsible for checking in patients at the front desk.[9]  On August 15, 2016, after being offered the combined position, Plaintiff submitted in writing her questions and concerns about taking on the additional responsibilities in accordance with KS company policy.[10]  After receiving the list of Plaintiff's questions and concerns, Dawn Rodriguez and Wendy Shapiro, Plaintiff's supervisor and manager, respectively, met with her that day to discuss these matters.[11]  Plaintiff accepted the new position, writing that she "appreciate[d] the opportunity to grow and acquire new skills."[12]  In August 2017, Williams applied for workers' compensation, alleging she was experiencing stress at work.[13]  Plaintiff was granted workers' compensation benefits.[14]  Plaintiff returned to work without any restrictions or change in her hours, job duties, or pay.[15]  In September 2017, KS determined that the combination of the PBX and front desk positions was not feasible, and Plaintiff reverted back to her role as solely a PBX operator with no reduction in her pay.[16]

---

[9]     *Id.*

[10]    Shapiro Decl. ¶ 5, Ex. 2 to Shapiro Decl. (August 15, 2015 email chain RE: Workload Transition Concerns).

[11]    *Id.*

[12]    Ex. 2 to Shapiro Decl. (August 15, 2015 email chain RE: Workload Transition Concerns).

[13]    Backus Decl. ¶ 12.

[14]    *Id.*

[15]    *Id.*

[16]    Shapiro Decl. ¶ 5.

On March 27, 2018, Plaintiff parked her car in a non-authorized spot outside of Defendants' offices after returning from lunch.[17]  As Plaintiff was walking from her car into the building, she encountered Ms. Shapiro, who was leaving the building on her lunch break.[18]  Ms. Shapiro told Plaintiff she was parked in a non-authorized parking space, and asked her to move her car.[19]  Plaintiff, who was on her cell phone at the time, returned to her car and moved it to an authorized parking space.[20]

On March 28, 2018, Ms. Rodriguez informed Ms. Shapiro that Plaintiff had publicly posted a picture of a sleeping co-worker to social media with a vulgar caption.[21]  Ms. Shapiro forwarded the picture to Clinic Director Brinda Springfield, who instructed Ms. Shapiro to hold a meeting with Plaintiff the next day.[22]  That night, Plaintiff sent an email to Ms. Rodriguez informing her that she was resigning from her position as a PBX Operator.[23]

The next day, Ms. Shapiro and Nurse Manager Laurie Dell'Aquila met with Plaintiff to discuss the picture.[24]  Plaintiff admitted to taking the picture with her cell

---

[17]  *Id.* ¶ 6.

[18]  *Id.*

[19]  *Id.*

[20]  *Id.*

[21]  *Id.*  Plaintiff captioned the photo "I don't mind coming to work but bullshit like this is non negotiable . . . especially when dealing with a sick child all night . . . #BITCHIMTIRED2  #GET YO ASS UP."

[22]  *Id.*

[23]  *Id.*

[24]  *Id.*

phone and posting it to social media without her co-worker's knowledge.[25] Ms. Dell'Aquila asked Plaintiff why her cell phone was out during work hours, and Plaintiff left the meeting.[26]

Ms. Rodriguez then met with Plaintiff to discuss the email she sent the night before announcing her resignation.[27]   Plaintiff told Ms. Rodriguez that she was having suicidal thoughts, and Ms. Rodriguez immediately involved Ms. Shapiro and Ms. Dell'Aquila.[28]   Ms. Shapiro and Ms. Dell'Aquila called the Employee Assistance Program ("EAP") hotline[29] for Plaintiff, and she remained on the line with EAP until she was taken by police for care in accordance with KS protocol.[30] After the police were called to escort Plaintiff to a specialized hospital, Dr. Nicholas Solomos, a Kelsey Seybold Staff Physician, waited with her at a private back entrance to the clinic.[31]   The entrance was on the second floor of the clinic's parking garage, near a ramp from street level.[32]   KS staff chose this location to avoid Plaintiff

---

[25]     *Id.*

[26]     *Id.*

[27]     *Id.*

[28]     *Id.*

[29]     The EAP is a resource available to Defendants' employees to assist with personal issues, including mental health.  *See* Exhibit A(13) to Backus Decl. (KS Human Resources Policy and Procedure Manu, Section 5.003 "Corrective Action); Ex. 2 to Plaintiff's Response, Deposition of Dr. Solomos ("Solomos Dep."), at 9:11-10:6.

[30]     Solomos Dep. at 68:12-70:1.

[31]     *Id.* at 49:25-51:24.

[32]     *Id.* at 51:21-52:1.

being picked up by the police near the busy front entrance of the building.[33] Plaintiff's resignation was not accepted, and she was provided unrequested FMLA leave while she received treatment for her suicidal thoughts.[34]

Plaintiff made a claim for disability insurance benefits for the work she missed while receiving treatment for her suicidal thoughts.[35]  Plaintiff's claim for disability insurance benefits was denied because Plaintiff "did not sustain an injury that [arose] from the course and scope of [her] employment."[36]  Plaintiff returned to work at KS as a PBX Operator in May 2018.[37]

In July 2018, Plaintiff filed complaints for discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission ("TWC") claiming that she had been denied reasonable accommodations, had been treated worse than other non-disabled employees, and was subjected to a hostile work environment.[38]  The EEOC issued Plaintiff a Notice

---

[33]     *Id.* at 49:20-24.

[34]     Shapiro Decl. ¶¶ 4, 6.

[35]     Second Declaration of Denise Backus [Doc. # 24-1] ("Second Backus Decl.") ¶ 6.

[36]     Exhibit 5 to Plaintiff's Response (Denial of Benefits Letter).

Several of the exhibits to Plaintiff's response contained unredacted sensitive personal information in violation of Fed. R. Civ. P. 5.2 and Local Rule 12.D.  *See* Doc. # 23-1 and Doc # 23-2.  The Court has sealed these documents.  *See* docket entry dated May 14, 2020.  Plaintiff may file redacted versions of Doc. # 23-1 and Doc # 23-2.  Plaintiff may **NOT** otherwise alter or add to Doc. # 23-1 and Doc # 23-2 when filing redacted versions.

[37]     Ex. A(14) to Backus Decl. (Summary of Plaintiff's FMLA leave).

[38]     Exhibit A(1) to Backus Decl. (July 19, 2018 EEOC Notice of Charge of Discrimination and July 9, 2018 TWC Charge of Discrimination).

of Right to Sue on August 24, 2018, and the TWC issued Plaintiff a Notice of Right to File a Civil Action on October 8, 2018.[39]  Plaintiff filed this action on October 12, 2018.[40]

## II.   SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides for the entry of summary judgment against a plaintiff who fails to make a sufficient showing of the existence of an element essential to their case and on which they will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*).   Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P.  56(a); *Celotex*, 477 U.S. at 322-23; *Curtis*, 710 F.3d at 594.

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact."  *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839 (5th Cir. 2012).   The moving party, however, "need not negate the elements of the nonmovant's case."  *Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).   The moving party may meet its burden by pointing out "the absence of evidence supporting the nonmoving party's case."

---

[39]      *Id.*

[40]      *See* Complaint [Doc. # 1].

*Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citing *Celotex*, 477 U.S. at 323; *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004); *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action." *Spring Street Partners-IV, L.P. v. Lam*, 730 F.3d 427, 435 (5th Cir. 2013). "A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.'" *Pioneer Exploration, L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002)); *accord Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (citation and internal quotation marks omitted). In the absence of any proof, the court will

not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The Court may make no credibility determinations or weigh any evidence. *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves Brokerage Co.*, 336 F.3d at 412-13). The Court is not required, however, to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence. *Id.* (citing *Reaves Brokerage*, 336 F.3d at 413); *accord, Little*, 37 F.3d at 1075. In addition, a party may not create a genuine issue of material fact "using an affidavit that impeaches, without explanation, sworn testimony." *S.W.S. Erectors v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996)). However, if an affidavit "'merely supplements rather than contradicts prior deposition testimony,' it may be considered when resolving the motion for summary judgment." *McArdle v. Dell Prods., L.P.*, 293 F. App'x 331, 335 (5th Cir. 2008) (quoting *S.W.S.*, 72 F.3d at 496).

## III.  DISCUSSION

Defendants move for summary judgment on all Plaintiff's claims, specifically, her claims for age and genetic information discrimination, hostile work environment, and retaliation. The Court will discuss each of these claims in turn.

### A.  Discrimination

Plaintiff claims she was discriminated against in violation of the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), and the Genetic Information Nondiscrimination Act ("GINA"). Defendants argue that Plaintiff has not exhausted her administrative remedies with respect to her age and genetic information discrimination claims because the Charge of Discrimination she filed with the EEOC and TWC only claimed she was a victim of disability discrimination. The Court addresses the threshold issue whether Plaintiff's age and genetic information claims are properly before the Court.

9

### 1.    Exhaustion of Administrative Remedies

Under the ADA "[n]o action . . .shall be brought . . if administrative remedies have not been exhausted." 42 U.S.C. § 6104(e)(2).  The ADA incorporates by reference the procedures applicable to actions under Title VII, which require that a plaintiff file a timely charge with the EEOC, receive a right-to-sue letter for the EEOC, and file suit within 90 days of receiving the right-to-sue letter.  *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996) (citing 42 U.S.C. § 2000e, *et seq.*).

"While a cause of action may be based on 'any kind of discrimination like or related to the charge's allegations' it is 'limited . . . by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges.'" *Anderson v. Venture Express*, 694 F. App'x 243, 247 (5th Cir. 2017) (quoting *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993)).  Courts interpret the scope of an EEOC complaint broadly, using a fact-intensive analysis that looks "beyond the four corners of the document to its substance."  *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008).  There is no requirement that a complainant check a particular box, so long as their EEOC charge contain factual allegations to support an un-checked claim.[41]  Claims based on incidents not alleged in the underlying

---

[41]    *McClain*, 519 F.3d at 273 (finding that "the claims contained in [plaintiff's] EEOC charge-'sex' 'retaliation' and 'pregnancy' discrimination-are not like or related to a claim of disability discrimination, and an EEOC investigation of disability discrimination could not reasonably have been expected to grow out of such a charge"); *Wojciechowski v. Nat'l Oilwell Varco, L.P.*, No. C–10–43, 2010 WL 1960977, at *8 (S.D. Tex. May 13, 2010) (precluding the plaintiff from filing suit based on retaliation because she did not check the "retaliation" box and failed to include facts related to retaliation); *Barrientos v. City of Eagle Pass, Tex.*, No. CIV.A. SA–10–CV–57–XR, 2010 WL 1544419, at *3 (W.D. Tex. Apr. 16, 2010) (granting partial motion to dismiss because plaintiff, on her EEOC charge, failed to mention facts that could serve as a basis for a retaliation claim); *Otokunrin v. MBNA Tech., Inc.*, No. CIV.A. 3:03–CV–1509–G, 2004 WL 833599, at *4–5

EEOC charge are deemed unexhausted.[42]  A complainant's failure to mark the box alleging a certain type of discrimination or include facts related to that discrimination "compels the conclusion that he failed to exhaust his administrative remedies before filing a lawsuit under the ADA." *Miller v. Southwestern Bell Tel. Co.*, 51 F. App'x 928 (5th Cir. 2002) (*per curiam*); *Huff v. DRE Mgmt.*, No. 3:12–CV–0414–B, 2012 WL 3072389, at *2 (N.D. Tex. July 30, 2012).

Here, Plaintiff only marked the box labeled "Disability" on her EEOC charge.[43]  The factual allegations in Plaintiff's EEOC charge are as follows:

> I have been subjected to lack of reasonable accommodations due to my disability.  I believe the Respondent failed to engage in an interactive process to address my requests for reasonable accommodations. Wendy Shapiro (Clinical Administrator) instead created measures to harass and force me out my job by creating a hostile work environment. Wendy Shapiro refused to accommodate my doctor's appointments for my "specific test[s]."  I believe the adverse actions by Wendy Shapiro were motivated to prevent and undermine my performance as an effective employee through her uncooperative and deprecating behavior towards me.  I believe I have been treated less fairly than similarly situated employees.

*Id.* (quotation marks and alterations in original).  The factual allegations in Plaintiff's EEOC charge are focused on her disability, and mention nothing about age or genetic information.   Plaintiff's claims for age and genetic information discrimination

---

(N.D. Tex. Apr.16, 2004) (dismissing plaintiff's claims because the facts stated in EEOC charge were not related to the claims in plaintiff's suit).

[42]   *Ganheart v. Brown*, 740 F. App'x 386, 390-91 (5th Cir. 2018) (finding plaintiff's administrative remedies were not exhausted with respect to claim based on a demotion subsequent to and not included in plaintiff's EEOC charge); *Fine*, 995 F.2d at 578 (finding plaintiff's administrative remedies were not exhausted where lawsuit was based on events that "could not reasonably be expected to be within the scope of the EEOC investigation" and were not listed in EEOC charge).

[43]   Ex. A(1) to Backus Decl.

11

"could not reasonably be expected to be within the scope of the EEOC investigation" related to her disability discrimination claim. *Fine*, 995 F.2d at 578. Plaintiff has not exhausted her administrative remedies with respect to her age and genetic information discrimination claims. The Court grants summary judgment in favor of Defendants on Plaintiff's age and genetic information discrimination claims.

### 2. Disability Discrimination Claim

To make out a claim of disability discrimination, Plaintiff can either present direct evidence of discrimination, including evidence that Defendants relied upon Plaintiff's disability in making employment decisions, or present indirect evidence of discrimination and utilize the method of proof set forth in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). "To make out his *prima facie* showing under that framework, [a plaintiff] must show that: (1) the plaintiff has a disability, or was regarded as disabled; (2) he was qualified for the job; and (3) he was subject to an adverse employment decision on account of his disability." *Cannon v. Jacobs Field Svcs. N. Am.*, 813 F.3d 586, 590 (5th Cir. 2016) (citing *McDonnell*, 411 U.S. at 802-03). Defendants do not dispute the first and second elements—that Plaintiff has a disability and was qualified for her job as a PBX Operator.[44] Defendants argue that Plaintiff cannot satisfy the third element—that she was subject to an adverse employment decision.

To be actionable, an adverse employment decision, also called an adverse employment action, must be a "tangible employment action that constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Banks v. East Baton Rouge Parish School Board,*

---

[44]     Motion at 30-31; *see also* Ex. A(3) to Backus Decl. (PBX Operator Job Description).

320 F.3d 570, 575 (5th Cir. 2003).   "Adverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating."  *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002).

Plaintiff argues that the following acts were adverse employment actions by Defendants: (1) adding patient intake responsibilities to Plaintiff's job duties as a PBX Operator, (2) reprimanding Plaintiff for parking in an unauthorized parking space, (3) reprimanding Plaintiff for posting an image of her co-worker to social media, (4) the treatment of Plaintiff immediately after she expressed suicidal thoughts, and (5) the denial of plaintiff's disability insurance benefits to Plaintiff after she expressed suicidal thoughts.[45]   None of these acts or circumstances constitute an "adverse employment action" under Fifth Circuit law.

### a.   Change in Plaintiff's Job Duties

In August 2016, Plaintiff was offered a trial position in which she would be responsible for checking in patients for treatment in addition to performing her duties as a PBX Operator.[46]  After discussing her various questions and concerns with her supervisor, Plaintiff accepted the position and worked in this role until September 2018.[47]  Plaintiff argues that Defendants' selection of her for this trial position was an adverse employment action because her duties increased without a commensurate increase in pay.

An employment transfer may qualify as an "adverse employment action" if the change makes the job "objectively worse."  *Hunt v. Rapides Healthcare Sys.*

---

[45]      Response at 10-11.

[46]      Backus Decl. ¶ 9.

[47]      Shapiro Decl. ¶ 5.

*LLC*, 277 F.3d 757, 770 (5th Cir. 2001) (holding defendant's reassignment of plaintiff to night shift position with the same duties, hours, and pay was not adverse employment action); *see also Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 879 (5th Cir. 1999) (holding denial of plaintiff's request for a lateral transfer to a position at a different location with the same job title, benefits, duties, and responsibilities was not adverse employment action); *Forsyth v. City of Dallas*, 91 F.3d 769, 774 (5th Cir. 1996) (transfer of police officers to a less prestigious, less interesting department with worse hours was adverse employment action); *Click v. Copeland*, 970 F.2d 106, 110 (5th Cir. 1992) (transfer to a job that is "not as interesting or prestigious" can constitute a demotion/adverse action). "Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 70 (2006).

There is no genuine dispute of material fact that the August 2016 change in her job duties was not an adverse employment action. Objectively, the change in Plaintiff's duties made her job more "interesting or prestigious." *Click*, 970 F.2d at 110. Plaintiff did not attempt to refuse the increased responsibilities, but voluntarily accepted them stating that she "appreciate[d] the opportunity to grow and acquire new skills."[48] Plaintiff received a pay raise the year she accepted the increased responsibilities and every year thereafter.[49] Defendants have shown there is no

---

[48]    Ex. 2 to Shapiro Decl. (August 15, 2015 email chain RE: Workload Transition Concerns).

[49]    Backus Decl. ¶ 8.

genuine dispute of material fact that Plaintiff's transfer to a hybrid PBX/patient intake role was not an adverse employment action.

### b.     Parking Lot Incident

On March 27, 2018, Plaintiff parked her car in a non-authorized spot outside Defendants' offices and her supervisor, Ms. Shapiro, asked to move her car.[50]  In her deposition, Plaintiff claims that in telling her to move her car, Ms. Shapiro "kept waving her arms . . . to push [Plaintiff] back toward [the] way of the street" and prevent her from getting on the sidewalk.[51]  As a result, Plaintiff claims, she was forced into the street where "cars were swerving and one car immediately stopped . . . abruptly in front of [Plaintiff], almost . . . hitting [her]."[52]

Accepting Plaintiff's version of the facts and assuming Ms. Shapiro in fact prevented Plaintiff from crossing the street, this incident did not "constitute[] a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Banks*, 320 F.3d at 575.  At most, the incident amounts to one of the "petty slights" or " simple lack of good manners" "that the Supreme Court has recognized are not actionable retaliatory conduct." *Stewart*, 586 F.3d at 332; *Credeur v. Louisiana through Office of Attorney General*, 860 F.3d 785, 798 (5th Cir. 2017).  There is no dispute of material fact that could cause the March 27, 2018 parking lot incident to be an adverse employment action.  *Aryain v. Wal– Mart Stores of Texas, LP*, 534 F.3d 473, 485 (5th Cir. 2008) (holding that a supervisor's "rude treatment" of an employee was not an adverse employment

---

[50]     Deposition of Jessica Williams [Doc. # 23-2] ("Williams Dep."), at 9:12-10:4.

[51]     *Id.*

[52]     *Id.* at 86:7-88:7.

action); *Peace v. Harvey*, 207 F. App'x. 366, 368 (5th Cir. 2006) (holding that plaintiff did not suffer an adverse employment action after she was yelled at by a supervisor and told that she could no longer park in her assigned parking space).

### c.      Reprimand for Social Media Post

On March 28, 2018, one day prior to Plaintiff expressing her suicidal thoughts, Plaintiff surreptitiously took a picture of a co-worker and posted the picture to social media with a vulgar caption.[53]  Ms. Shapiro and Nurse Manager Laurie Dell'Aquila met with Plaintiff the next day to discuss the photo, but Plaintiff was not formally reprimanded or punished.[54]  Plaintiff argues that her treatment for posting the photo was an adverse employment action because "[t]here is nothing in the employee handbook regarding taking pictures or using your cellphone for such" and "there were no rules to support Plaintiff being pulled into the office over such a personal expression."[55]  Defendants argue that this was not an adverse employment action because Plaintiff was not formally punished and faced no repercussions.

Defendants have shown beyond genuine dispute of material fact that the meeting of Plaintiff with Ms. Shapiro and Ms. Dell'Aquila was not an adverse employment action.  Plaintiff faced no "significant change in employment status" as a result of the meeting, and apparently left in the middle of the meeting without consequence.  *Banks,* 320 F.3d at 575.  Even if Plaintiff's posting a photo of her co-worker with a derogatory and vulgar caption could be deemed to be acceptable behavior under KS's employee code of conduct, which it is not, Defendants' act of meeting with Plaintiff and discussing the matter is not an adverse employment action

---

[53]      Shapiro Decl. ¶ 6.

[54]      *Id.*

[55]      Response at 6.

as a matter of law.  *See King v. Louisiana*, 294 F. App'x 77, 85 (5th Cir. 2008) ("allegations of unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment do not constitute actionable adverse employment actions as discrimination or retaliation."); *see also Walton v. Bisco Industries, Inc.*, 119 F.3d 368, 372 (5th Cir. 1997) ("discrimination laws [are not] vehicles for judicial second-guessing of business decisions.").  Indeed, the Fifth Circuit has long emphasized that discrimination laws are "not a shield against harsh treatment at the workplace. . ." *Jackson v. City of Killeen*, 654 F.2d 1181, 1186 (5th Cir. 1981). "Chastisement by superiors . . . 'do[es] not rise to the level of material adversity' that distinguishes an adverse employment action from 'petty slights, minor annoyances, and simple lack of good manners' that the Supreme Court has recognized are not actionable retaliatory conduct." *Credeur*, 860 F.3d at 798 (quoting *Stewart v. Mississippi Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009)). There is no genuine dispute of material fact that the meeting regarding Plaintiff's social media post was not an adverse employment action.

### d.  Treatment of Plaintiff after Expressing Suicidal Thoughts

On March 29, 2018, Plaintiff told her supervisor that she was having suicidal thoughts at work.  Plaintiff thereafter was escorted to a spot outside the rear entrance of the clinic to wait for the police to arrive.[56]  The private entrance was on the second story at the rear of the building and could be accessed via a ramp from street level.[57] Plaintiff describes this location as a "roof" and argues that Defendants' escorting her there was part of a conspiracy by Ms. Shapiro and others to cause her to harm

---

[56]    Shapiro Decl. ¶ 6.

[57]    Solomos Dep. at 49:25-50:14.

herself.[58]  Defendants argue that this course of action was merely the implementation of their procedures for dealing with suicidal individuals.

Defendants have shown that, even under Plaintiff's rendition of the March 29, 2018 events, she did not suffer an adverse employment action.  The undisputed summary judgment evidence reveals without contradiction that Plaintiff was treated in accordance with Defendants' sensible company policy for dealing with suicidal individuals.  Plaintiff herself admits that Ms. Dell'Aquila suggested that Plaintiff go to the private entrance to the building so she could have relative privacy while waiting for the police to arrive.[59]  Plaintiff appropriately was never left alone.[60]

### e.    Denial of Benefits

Plaintiff sought disability insurance benefits for the time she was on leave for treatment for her suicidal thoughts.  Plaintiff's disability insurance benefits claim was denied because she "did not sustain an injury that [arose] from the course and scope of employment" and "d[id] not have an injury that has [sic] the statutory definition of an accident."[61]  Plaintiff argues that someone working for Defendants submitted false information to Plaintiff's disability insurer, causing her claim to be wrongly denied.[62]  In their reply, Defendants present uncontradicted evidence that no one in Ms. Williams' chain of command had input into whether KS employees received disability insurance benefits.

---

[58]    Response at 8-9.

[59]    Williams Dep. at 90:13-22.

[60]    *Id.* at 87:23-88:3; 89:3-5.

[61]    Ex. 5 to Plaintiff's Response (Notice of Denial of Compensability/Liability and Refusal to Pay Benefits).

[62]    Response at 10-11.

18

Defendants have demonstrated the absence of any genuine dispute of material fact that they had no control over whether or not Plaintiff's disability insurer paid her claim.   Defendants' disability insurance is administered by a third-party administrator.[63]  Plaintiff has not produced any evidence that her supervisors had or now have any input into whether an applicant receives disability insurance benefits.[64]  Defendants have shown there is no genuine dispute of material fact that the denial of Plaintiff's disability insurance benefits was not an adverse employment action.

### B.   <u>Hostile Work Environment</u>

Plaintiff devotes much of the argument in her Response to a hostile work environment claim that she asserts she has brought in this case.[65]  Hostile work environment, however, is not a theory articulated in the counts in Plaintiff's Complaint.  Indeed, Plaintiff has not in her Complaint included anywhere the phrase "hostile work environment."[66]  Nevertheless, because a hostile work environment is a form of discrimination and because Plaintiff's EEOC charge includes allegations of a hostile work environment claim, the Court will consider the parties' arguments about that theory.

In order to succeed on a claim for hostile work environment, an employee must prove: (1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome harassment; (3) that harassment was based on her membership in the protected class; (4) that the harassment affected a term, condition,

---

[63]    Second Backus Decl. ¶ 6.

[64]    *Id.*

[65]    *See* Response at 2-3, 9-10.

[66]    *See* Complaint [Doc. # 1].

or privilege of her employment, and (5) that the employer knew or should have known of the harassment and failed to take prompt remedial action. *Flowers v. S. Reg'l Physician Services Inc.*, 247 F.3d 229, 235–36 (5th Cir. 2001). To "affect[ ] a term, condition, or privilege of employment," the harassing conduct "'must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Aryain*, 534 F.3d at 479 (quoting *Lauderdale v. Texas Dept. of Criminal Justice, Institutional Div.*, 512 F.3d 157, 163 (5th Cir. 2007)). The work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)). "'Whether an environment is hostile or abusive depends on a totality of circumstances, [including] frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance.'" *Green v. Adm'rs of the Tulane Educ. Fund*, 284 F.3d 642, 655–56 (5th Cir. 2002) (citation omitted).

If an employee makes a *prima facie* case of a hostile work environment, the employer can raise an affirmative defense to liability by demonstrating (1) that the employer exercised reasonable care to prevent and correct promptly any harassing behavior; and (2) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer to avoid harm or otherwise. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher*, 524 U.S. at 807. Defendants argue that the conduct complained of by Plaintiff was not severe or pervasive as a matter of law.

In order to be actionable, "the harassment must be so 'severe and pervasive that it destroys a protected [employee's] opportunity to succeed in the work place.'" *Hockman v. Westward Communications, LLC*, 407 F.3d 317, 326 (5th Cir. 2004)

(quoting *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999)).   "[R]ude or offensive comments, teasing or isolated incidents" are insufficient to support a hostile work environment claim as a matter of law.  *Id.*

The undisputed summary judgment evidence in the case at bar reveals that Plaintiff's treatment did not "destroy[] [her] opportunity to succeed in the workplace."  *Hockman*, 407 F.3d at 326.  Plaintiff has received consistently good performance reviews, regular pay increases, and willingly took on a new role with increased responsibilities in a pilot program.  Construing the evidence in the light most favorable to Plaintiff, and without making credibility determinations, the isolated incidents of harassment or discourteous conduct Plaintiff complains of are not severe or pervasive as a matter of law.   The extensive record evidence shows that Defendants have made significant efforts to accommodate Plaintiff's needs and afford her opportunities for success.   The Court grants Defendants' motion for summary judgment on Plaintiff's hostile work environment claim.

## C.   <u>Retaliation</u>

Plaintiff alleges that she faced retaliation from Defendants for requesting accommodations and making complaints about how she was treated by her supervisors.  "To establish a *prima facie* case of retaliation under the ADA or Title VII, a plaintiff must show that (1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action."  *Feist v. Louisiana Dept. of Justice*, 730 F.3d 450, 454 (5th Cir. 2013).  "If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision.  After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation," *LeMaire*, 480 F.3d at 388–89, which the employee may do by showing that the adverse action would not have occurred but

for the employee's participation in a protected activity, *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

Defendants argue that they are entitled to summary judgment on Plaintiff's retaliation claim because Plaintiff has not exhausted her administrative remedies with respect to this claim. In the alternative, Defendants argue that Plaintiff cannot establish a *prima facie* case of retaliation because she has not shown that she suffered an adverse employment action and cannot show a causal connection between protected conduct and any adverse employment action.

### 1.    Exhaustion of Administrative Remedies

Defendants argue that Plaintiff has not exhausted her administrative remedies with respect to her retaliation claim because she did not mark the box labeled "Retaliation" in her EEOC charge. However, as discussed above, a plaintiff is not required to "check a certain box or recite a specific incantation to exhaust his or her administrative remedies." *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006). A plaintiff's administrative remedies are exhausted for claims within "the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges." *Fine*, 995 F.2d at 578.

Here, the factual allegations in Plaintiff's EEOC charge could reasonably be expected to give rise to an investigation for retaliation. Plaintiff's EEOC charge stated: "Respondent failed to engage in an interactive process to address my requests for reasonable accommodations. Wendy Shapiro (Clinical Administrator) instead created measures to harass and force me out my job by creating a hostile work environment."[67] While Plaintiff does not use the term retaliation or clearly describe retaliatory conduct, in an exercise of caution and the interests of justice, the Court will address Plaintiff's retaliation claim.

---

[67]    Ex. A(1) to Backus Decl.

### 2.      Adverse Employment Action

Plaintiff supports her retaliation claim by relying on the same alleged adverse employment actions she argues support her discrimination claim.  As discussed above, none of these actions constitute adverse employment actions sufficient to support a discrimination claim.

For an employer's act to qualify as an adverse employment action sufficient to support a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 68 (citation and internal quotation marks omitted).  For all the same reasons the actions Plaintiff complains of do not support a claim for discrimination, they would not dissuade an employee from engaging in a protected activity and do not support Plaintiff's claim for retaliation.

### 3.      Causal Connection

Even if Plaintiff could show a genuine dispute of material fact regarding an adverse employment action, Defendants have shown beyond material dispute that there is no causal connection between protected conduct by Plaintiff and any adverse employment action.

Under the *McDonnell Douglas* burden shifting framework, Plaintiff need not prove "but-for" causation at the *prima facie* stage.  *Ackel v. National Communications, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003).  "[I]n other words, it is not initially necessary for the plaintiff to demonstrate that the protected activity was the sole reason for the adverse employment decision." *Tucker v. SAS Institute, Inc.*, 462 F. Supp.2d 715, 730 (N.D. Tex. 2006).  "Nevertheless, the plaintiff must produce *some* evidence of a causal link between the protected activity and the

adverse employment action to establish a *prima facie* case of retaliation." *Ackel*, 339 F.3d at 385 (emphasis in original).

Plaintiff argues that she engaged protected conduct for which she faced retaliation by filing complaints against Defendants and taking time off to care for her mental health.[68] The summary judgment evidence shows that the only complaint Plaintiff filed with Defendants was her July 9, 2018 charge of discrimination that led to this lawsuit. Because every instance of alleged retaliation came *before* this protected activity, Plaintiff's filing a charge with the EEOC cannot be a cause of the alleged retaliation.

Plaintiff also has failed to show a causal link between her requests for time off and any adverse employment action. Plaintiff requested and received time off to care for herself or family members on 48 occasions. There is no evidence showing that these requests led to any adverse action. Instead, the summary judgment evidence shows that Defendants were generous in giving Plaintiff time off: Defendants approved all of Plaintiff's requests and even provided her with unrequested FMLA leave to seek treatment after she mentioned she was having suicidal thoughts at work. Defendants have shown beyond material dispute that there is no causal connection between any alleged adverse employment action and any protected conduct by Plaintiff. The Court grants summary judgment in favor of Defendants on Plaintiff's retaliation claim.

## IV.   CONCLUSION

Plaintiff has not exhausted her administrative remedies with respect to her claims for age and genetic information discrimination. Plaintiff has exhausted her administrative remedies with respect to her claims for disability discrimination and hostile work environment, but cannot show that she suffered an adverse employment

---

[68]   Response at 11-12.

action or that any harassment was severe or pervasive.  Even if Plaintiff could show she suffered an adverse employment action, there is no evidence that that action was in retaliation for her engaging in statutorily protected activity.  It is therefore

**ORDERED** that Defendants' Motion for Summary Judgment [Doc. # 21] is **GRANTED** and Plaintiff's claims all must be dismissed with prejudice.

A separate final judgment will be issued.

SIGNED at Houston, Texas, this 26th day of **May, 2020**.

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE